IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PETER LIRA,

        Plaintiff,                  No. CIV S-06-1717 KJM

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.           ORDER

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively.  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////

/////

/////

/////

1

I. Factual and Procedural Background

In a decision dated January 12, 2006, the ALJ determined plaintiff was not disabled.[1]  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of asthma, hypertension, diabetes mellitus, coronary artery disease and obesity but these impairments do not meet or medically equal a listed impairment; plaintiff is not totally credible; plaintiff has the residual functional capacity to perform sedentary work with certain postural and environmental limitations; plaintiff cannot perform his past relevant work; and using Medical-Vocational Rule 201.27 as a framework for decision-making, plaintiff is not disabled.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1   Administrative Transcript ("AT") 23-24.  Plaintiff contends the ALJ committed error at step two,

2   improperly rejected the opinion of an examining physician, improperly discredited plaintiff, and

3   should have obtained the testimony of a vocational expert.  Plaintiff also requests that this court

4   consider new evidence.

5   II.  Standard of Review

6          The court reviews the Commissioner's decision to determine whether (1) it is

7   based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

8   record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

9   Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

10  Substantial evidence means more than a mere scintilla of evidence, but less than a

11  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

12  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

13  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

14  U.S. 389 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  The

15  record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986),

16  and both the evidence that supports and the evidence that detracts from the ALJ's conclusion

17  weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the

18  ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also

19  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

20  administrative findings, or if there is conflicting evidence supporting a finding of either disability

21  or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

22  1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

23  weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

24  /////

25  /////

26  /////

III.  Analysis

    A.  Severity of Impairments

        Plaintiff contends the ALJ ignored several diagnosed disorders at step two of the sequential analysis.  An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered."  SSR 85-28.  The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account.  Bowen v. Yuckert, 482 U.S. 137 (1987).  "The step-two inquiry is a de minimis screening device to dispose of groundless claims."  Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996);  see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001).

        Plaintiff argues the ALJ failed to recognize as severe a number of medical conditions including chronic obstructive pulmonary disease, hypertensive cardiomyopathy, congestive heart failure, and depression.  Although the burden is on plaintiff at step two of the sequential evaluation, see Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998), counsel for plaintiff has offered no meaningful argument in support of the claim that the ALJ erred at step two.  A mere recitation of medical diagnoses does not demonstrate how each of the conditions included in that recitation impacts plaintiff's ability to engage in basic work activities.  Put another way, a medical diagnosis does not an impairment make.  Plaintiff cites instances of various medical conditions being diagnosed, but the diagnoses predate January 29, 2004, the alleged date of onset of disability, and the subsequent medical records do not support a claim that these are severe impairments.  AT 16, 111, 127-128, 148-149, 183-184.  With respect to plaintiff's contention that he has a severe mental impairment, the ALJ properly relied on the opinion of examining psychologist Dr. McCray in finding no severe mental impairment.   AT 18, 180-181.  There was no error in the step two analysis.

/////

B.  Medical Opinion

Plaintiff also contends the ALJ improperly rejected the limitations assessed by examining physician, Dr. Selcon.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

Dr. Selcon opined that plaintiff could sit without limitations, could lift/carry without limitations unless chest pain was precipitated, had no postural, manipulative, visual, communicative, or workplace limitations, but that plaintiff was limited to stand/walking in an eight-hour work period to less than two hours.  AT 174.  This assessment was based on

1  plaintiff's reported history and physical examination, with no review of medical records.  AT
2  170-171.  The ALJ accorded substantial weight to Dr. Selcon's opinion but rejected the
3  assessment limiting plaintiff's standing/walking as inconsistent with Dr. Selcon's findings on
4  physical exam.  AT 21, 172-173 (range of motion grossly normal bilaterally), 174 (upper and
5  lower extremity strength, muscle tone, sensation and gait normal).  The ALJ instead gave
6  substantial weight to the physical residual functional capacity assessment of the state agency
7  physician, who reviewed all the records and noted Dr. Selcon's limitations were not supported by
8  objective physical findings or plaintiff's activities of daily living and that plaintiff had normal
9  lower extremities, no neuropathy and his asthma was stable with medications.  AT 183, 188.  The
10 lack of clinical findings, supported by the state agency assessment, is a sufficient reason for the
11 ALJ's rejection of Dr. Selcon's limitation on standing/walking.

12     C.  Credibility

13         Plaintiff also contends the ALJ improperly discredited his testimony.  The ALJ
14 determines whether a disability applicant is credible, and the court defers to the ALJ's discretion
15 if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94
16 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility
17 finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d
18 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific,
19 cogent reason for the disbelief").

20         In evaluating whether subjective complaints are credible, the ALJ should first
21 consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947
22 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,
23 the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,
24 medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:
25 (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent
26 testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

6

1  prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

2  1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

3  55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

4  and effect of symptoms, and inconsistencies between testimony and conduct also may be

5  relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure

6  to seek treatment for an allegedly debilitating medical problem may be a valid consideration by

7  the ALJ in determining whether the alleged associated pain is not a significant nonexertional

8  impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ

9  may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,

10  1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900

11  F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is

12  malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear

13  and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.

14  1999).

15          Plaintiff asserted disability on the basis of pain in the legs and breathing problems.

16  AT 53.  Plaintiff testified, however, that he could work full time at a sedentary job.  AT 434.  In

17  rejecting plaintiff's claim that his symptoms precluded gainful employment, the ALJ

18  appropriately factored into the credibility analysis plaintiff's testimony regarding his ability to

19  work in a "sitting" job.  AT 20.  The ALJ also considered the routine, conservative nature of

20  plaintiff's treatment for allegedly disabling conditions and that no physician had opined that

21  plaintiff was disabled.  AT 20, 103, 204-361.  The ALJ also factored into his credibility analysis

22  plaintiff's activities of daily living, which included working at the computer for three hours daily,

23  cooking, gardening, going out with family and shopping, and driving, which the ALJ found to be

24  inconsistent with plaintiff's claim of disabling symptoms.  AT 20, 438-440.  The ALJ also noted

25  plaintiff had engaged in work activity after the alleged date of onset of disability and that this

26  work activity ceased due to reasons other than disability.  AT 20, 429-431.  The factors

7

1  considered by the ALJ all were valid and supported by the record.  The ALJ's credibility

2  determination was based on permissible grounds and will not be disturbed.

3       D.  Grids

4       Plaintiff also contends the ALJ should have obtained the testimony of a vocational

5  expert instead of relying on the grids.  The Medical-Vocational Guidelines ("the grids") are in

6  table form.  The tables present various combinations of factors the ALJ must consider in

7  determining whether other work is available.  See generally Desrosiers, 846 F.2d at 577-78

8  (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and

9  work experience.  For each combination, the grids direct a finding of either "disabled" or "not

10 disabled."

11      There are limits on using the grids, an administrative tool to resolve individual

12 claims that fall into standardized patterns:  "[T]he ALJ may apply [the grids] in lieu of taking the

13 testimony of a vocational expert only when the grids accurately and completely describe the

14 claimant's abilities and limitations."  Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see

15 also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983).  The ALJ may rely on the grids,

16 however, even when a claimant has combined exertional and nonexertional limitations, if

17 nonexertional limitations are not so significant as to impact the claimant's exertional

18 capabilities.[2]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds,

19 Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-

20 64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant

21

22      [2]  Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).

23      Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R.

24 § 416.969a (c); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability to

25 work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids."  Penny v. Sullivan, 2 F.3d 953,

26 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

1   limitation on exertional capabilities in order to depart from the grids).

2         The ALJ found plaintiff was not disabled under grid rule 201.27 (sedentary work).

3   Plaintiff contests the ALJ's reliance on the grids because the state agency physician found

4   plaintiff had some nonexertional limitations.  AT 183-186.  The ALJ specifically addressed the

5   effect the assessed postural and environmental limitations would have on the sedentary basis.

6   The ALJ correctly relied on SSR 85-15[3] in finding that these nonexertional limitations would not

7   significantly erode the occupational base for sedentary work.  AT 21-23.  The ALJ did not

8   include in the residual functional capacity finding a requirement that plaintiff take breaks every

9   hour when standing/walking.  Including this limitation is unnecessary in light of SSR 96-9p,

10  which provides that the full range of sedentary work requires only that an individual be able to

11  stand and walk for a total of approximately two hours in an eight-hour workday.  There is no

12  requirement that the two-hour amount of time be accomplished without break.  Because plaintiff

13  does not have nonexertional limitations that erode the sedentary occupational base, there was no

14  error in the ALJ's reliance on the grids.

15      E.  New Evidence

16        Plaintiff has submitted a declaration dated February 3, 2007 and a list of medical

17  providers indicating treatment over the past six months.   A case may be remanded to the

18  Secretary for the consideration of new evidence if the evidence is material and good cause exists

19  for the absence of the evidence from the prior record.  <u>Sanchez v. Secretary of HHS</u>, 812 F.2d

20  509, 511-12 (9th Cir. 1987).  Here the additional evidence is immaterial.  The date of the ALJ's

21  decision is January 12, 2006 and the additional information plaintiff provides pertains to a time

22  period well past the date of the decision at issue.  There is no reasonable possibility that the new

23

24      [3]  Social Security Rulings "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted."  20 C.F.R. § 402.35(b)(1).  Social Security Rulings are "binding on all components of the Social Security Administration."  <u>Heckler v.</u>

25  <u>Edwards</u>, 465 U.S. 870, 873 n.3 (1984); <u>cf.</u>  <u>Silveira v. Apfel</u>, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings ... unless they are plainly erroneous or

26  inconsistent with the Act or regulations").

1  evidence would have changed the outcome of this case.  Booz v. Secretary of Health and Human

2  Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984).  The court therefore declines to consider the

3  additional evidence.

4          The ALJ's decision is fully supported by substantial evidence in the record and

5  based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

6          1.  Plaintiff's motion for summary judgment or remand is denied, and

7          2.  The Commissioner's cross-motion for summary judgment is granted.

8  DATED:  March 27, 2008.

9

10  _____
    U.S. MAGISTRATE JUDGE

11

12  006
    lira.ss

13

14

15

16

17

18

19

20

21

22

23

24

25

26